IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| COLLEEN BAGLEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 05-3156 |
| | ) | |
| ROD BLAGOJEVICH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendants Blagojevich, Curry, Walker and Smock's Memorandum of Law Regarding the Propriety of Taking the Deposition of the Governor (d/e 46) ("State Defendants' Memorandum"). Plaintiffs are former correctional captains with the Illinois Department of Corrections ("IDOC"). Plaintiffs allege that Defendants retaliated against them for exercising their First Amendment rights. Defendant Rod Blagojevich is the Governor of Illinois. Plaintiffs have expressed an intent to depose the Governor in connection with the instant lawsuit. Defendants Blagojevich, Curry, Walker and Smock ("the State Defendants") object to such a deposition and ask the Court to enter a

protective order precluding any party from issuing a Notice of Deposition for the Governor. For the reasons set forth below, the State Defendants' request is denied.

BACKGROUND

Blagojevich was first elected Governor of the State of Illinois in November 2002. In the spring of 2003, Blagojevich submitted his first budget to the Illinois General Assembly. In this budget, which applied to fiscal year 2004, Blagojevich proposed eliminating funding for the position of correctional captain. It appears from the record that the correctional captain position was a middle management position within the IDOC. The General Assembly disagreed with this decision, and when it submitted its fiscal year 2004 budget to the Governor, it included full funding for the correctional captain position. Blagojevich then utilized a line item veto to eliminate funding for the correctional captain position.

In their First Amended Complaint (d/e 15), Plaintiffs allege that, in late 2002, they attempted to unionize with the Illinois State Employees Association ("ISEA"). ISEA is a competitor union to the American Federation of State, County, and Municipal Employees Council 31 ("AFSCME"). According to the First Amended Complaint, "AFSCME was a

major financial contributor to the gubernatorial campaign of Governor Blagojevich." First Amended Complaint, ¶ 75. Plaintiffs allege that AFSCME was opposed to the attempts of the Plaintiffs to unionize with ISEA. Defendants Maupin and Bayer are AFSCME officials. According to Plaintiffs, Maupin and Bayer were personally opposed to their attempts to unionize with ISEA. Plaintiffs contend that Maupin and Bayer did not want a union at the IDOC that might compete with AFSCME.

The First Amended Complaint asserts that, after Governor Blagojevich was inaugurated, Maupin and Bayer played a critical role in shaping employee policies for the State of Illinois. Plaintiffs allege that, as a result of AFSCME's campaign contributions, Maupin and Bayer were given access to Governor Blagojevich and met with him to discuss employment decisions within IDOC. Plaintiffs further allege that Governor Blagojevich became aware of Plaintiffs' attempt to unionize. According to Plaintiffs, after being encouraged by Maupin and Bayer, the State Defendants retaliated against Plaintiffs because of their attempt to unionize by removing them from their positions as correctional captains and offering them the option of either taking a significant demotion in rank and pay or having their employment with IDOC terminated. Plaintiffs further allege

that the former captains who had been demoted to correctional lieutenant and correctional officer positions were stripped of their seniority. Plaintiffs assert that these decisions were made by Governor Blagojevich in conjunction with Curry, Walker, Smock, Bayer, and Maupin.

ANALYSIS

Plaintiffs have expressed an intent to depose the Governor in connection with the instant lawsuit. The State Defendants object. The Seventh Circuit has noted that "depositions of public officials create unique concerns. 'They should not have to spend their time giving depositions in cases arising out of the performance of their official duties unless there is some reason to believe that the deposition will produce or lead to admissible evidence.'" Stagman v. Ryan, 176 F.3d 986, 994-95 (7th Cir. 1999) (quoting Olivieri v. Rodriguez, 122 F.3d 406, 409-10 (7th Cir. 1997)).

The parties disagree as to the legal standard that this Court should apply in its analysis. The State Defendants assert that Plaintiffs should be required to identify a particularized need for the deposition and show that such need has not and cannot be satisfied in a less burdensome manner. The State Defendants, however, cite no controlling authority supporting this standard. Plaintiffs assert that high ranking public officials are not immune

from being deposed provided there is some reason to believe that the deposition will produce or lead to admissible evidence. Plaintiffs cite several cases from the Southern District of New York for the general proposition that a party seeking to bar a deposition bears the burden of showing that the deponent has nothing to contribute.

The scope of discovery includes "any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The Court notes that a court in the Northern District of Illinois has recently interpreted the Seventh Circuit's Olivieri opinion as requiring that "[a] party seeking the deposition of a high ranking official should first demonstrate that there is some reason to believe that the deposition will produce or lead to admissible evidence." Hobley v. Burge, 2007 WL 551569, at *2 (N.D. Ill. Feb. 22, 2007). The Court believes this to be an accurate assessment of the relevant law in the Seventh Circuit. Thus, the Court will rely upon it in considering the State Defendants' request, placing a burden on Plaintiffs' to demonstrate that the deposition of the Governor will produce or lead to admissible evidence.

The Seventh Circuit addressed the issue of deposing a high ranking public official in Stagman v. Ryan.  Stagman, a former employee of the Office of the Illinois Attorney General, sued alleging that his employment was terminated in retaliation for his union involvement.  In Stagman, the Seventh Circuit upheld the District Court's decision to deny the plaintiff's request to depose then-Illinois Attorney General Jim Ryan.  Stagman, 176 F.3d at 994-95.  The Seventh Circuit noted that the undisputed evidence before the District Judge showed that Attorney General Ryan was not personally involved in the decision to terminate Stagman's employment. Moreover, the Court noted that there was no evidence that Ryan knew of Stagman's union activities.  Thus, the Court of Appeals found that the District Court reasonably concluded that deposing Ryan would serve no useful purpose.

The instant case is factually distinguishable from Stagman.  Under the facts of the present case, Governor Blagojevich is likely to possess relevant information, such that requiring him to sit for deposition would be reasonable.  As an initial matter, the record reveals that the decision to eliminate the correctional captain position was a wide-sweeping personnel decision, affecting more than 200 captains and eliminating $17.3 million

from the IDOC budget. Plaintiffs allege that the Governor was either the ultimate decision maker or at least personally involved in the decision to eliminate the correctional captain position. As support, Plaintiffs have provided the Court with a June 4, 2003 press release from the Office of the Governor, in which the Governor personally takes credit for the decision to eliminate the correctional captain position, as well as a newspaper article containing similar comments. Plaintiff's Memorandum of Law in Opposition to Motion to Prohibit the Taking of the Deposition of Governor Blagojevich (d/e 47) (Plaintiffs' Memorandum), Ex. 3 & 4. Indeed, the State Defendants do not dispute the fact that the Governor had a role in the decision to eliminate the correctional captain position. The State Defendants submit that "[o]ne of Governor Blagojevich's commitments to the people of Illinois was to eliminate unnecessary layers of management within Illinois government. One of those superfluous layers was the position of correctional captain within the Illinois Department of Corrections, and that position was eliminated." State Defendants' Memorandum, p. 1.

Additionally, in their Rule 26 Initial Disclosures, the State Defendants list the Governor as "expected to have knowledge concerning his own actions and thought process . . . ." Plaintiffs' Memorandum, Ex. 1, p. 9.

The Union Defendants list the Governor as having information regarding the decision to eliminate the position of captain.  Id., Ex. 2, p. 3.  The Court notes that the State Defendants have not produced any evidence, such as an affidavit, to establish that the Governor lacks personal knowledge that relates to Plaintiffs' claims.

For all of these reasons, the Court finds that Plaintiffs have sufficiently demonstrated some reason to believe that the deposition of Governor Blagojevich will produce or lead to admissible evidence.  This is sufficient to justify his deposition at a convenient time and place.

THEREFORE, Defendants Blagojevich, Curry, Walker and Smock's Memorandum of Law Regarding the Propriety of Taking the Deposition of the Governor (d/e 46) is DENIED.

IT IS THEREFORE SO ORDERED.

ENTER:   March 28, 2007

      FOR THE COURT:

                  s/ Byron G. Cudmore
                  _____
                    BYRON G. CUDMORE
              UNITED STATE MAGISTRATE JUDGE