IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| COLLEEN BAGLEY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 05-3156 |
| | ) | |
| ROD BLAGOJEVICH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

Asserting a legislative immunity defense, the Governor of Illinois, Defendant Rod Blagojevich, moves this Court to dismiss Plaintiffs' First Amended Complaint and to reconsider a prior order denying the imposition of a protective order forbidding or delaying his deposition. Defendant Julie Curry, also basing her claims on legislative immunity, urges this Court to enter a protective order prohibiting any questioning relating to Governor Blagojevich's veto actions. For the following reasons, the motions are denied.

# I.  BACKGROUND

## A.  Factual History

Prior to August 1, 2003, Plaintiffs were employed as Correctional Captains in the Illinois Department of Corrections ("IDOC").  Late in 2002, the Plaintiffs attempted to unionize not only themselves but all Correctional Captains in the IDOC.  The Plaintiffs sought to join with the Illinois State Employees Association ("ISEA"), a competitor of the American Federation of State, County, and Municipal Employees ("AFSCME") union.  A major contributor to the campaign of Defendant Governor Rod Blagojevich ("Governor Blagojevich"), the AFSCME opposed the Plaintiffs' affiliation with the ISEA and allegedly convinced Governor Blagojevich to eliminate the position of Correctional Captain.  Using his veto power, Governor Blagojevich struck the Correctional Captain position from the budget on June 4, 2003.[1]  With their positions terminated,

---

[1] This fact does not appear on the face of the pleadings, and thus could have no bearing on a motion to dismiss.  As discussed below, however, this "Motion to Dismiss" is actually a motion for judgment on the pleadings.  Normally, even on a motion for judgment on the pleadings, "[t]he district court may not look beyond the pleadings, and all uncontested allegations to which the parties had an opportunity to respond are taken as true." *United States v. Wood*, 925 F.2d 1580, 1581-82 (7th Cir. 1991) (citing *Flora v. Home Fed. Sav. and Loan Ass'n.*, 685 F.2d 209, 211 (7th

(continued...)

Plaintiffs were given the option of quitting the IDOC or accepting lower ranking positions. While only three of the sixty Plaintiffs left the IDOC, most were demoted to Correctional Officer, an entry level position, or were reduced to the rank of Correctional Lieutenant. Plaintiffs then brought suit against several individuals, including Governor Blagojevich and his then Deputy Chief of Staff, Julie Curry ("Curry"), alleging First Amendment violations under 28 U.S.C. § 1983. Specifically, Plaintiffs claim that Governor Blagojevich took retaliatory action against them by removing them from their positions and, after giving them new positions, stripping them of their seniority.

B.   **Procedural History**

On February 27, 2007, Governor Blagojevich filed a "Memorandum of Law Regarding the Propriety of Taking the Deposition of the Governor"

---

[1](...continued)
Cir. 1982)). Here, however, the undisputed fact of the Governor's veto is an issue of public record and this Court takes judicial notice of it. *See Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 600 (7th Cir. 2004) (taking judicial notice of administrative findings in the context of a judgment on the pleadings); *Al-Salam Mosque Found. v. City of Palos Heights*, No. 00-C-4596, 2001 WL 204772, *1 (N.D. Ill. Mar. 1, 2001) (taking judicial notice of a mayor's veto where it was not in dispute and was a matter of public record). All other factual averments occurring outside of the pleadings are hereby disregarded for purposes of ruling on the "Motion to Dismiss."

(d/e 46). This motion made no mention of legislative immunity. On March 28, 2007, the magistrate judge issued a written opinion denying the motion (d/e 49). Governor Blagojevich filed a timely objection to this order (d/e 52) under Federal Rule of Civil Procedure 72(a). This objection made only summary reference to legislative immunity and noted that the issue was not raised before the magistrate judge. On May 10, 2007, this Court denied the motion by adopting the magistrate judge's opinion in full (d/e 55). Governor Blagojevich responded with a Motion for Protective Order, urging this Court to reconsider its earlier ruling (d/e 56). This Court again affirmed its earlier ruling in a June 22, 2007, written opinion (d/e 64).

On July 25, 2007, Governor Blagojevich filed his latest reconsideration motion (d/e 71). Shortly thereafter, he also filed a Motion to Dismiss (d/e 74) and Defendant Curry filed her Motion for a Protective Order (d/e 76). Because all three of these motions concern the common core issue of legislative immunity, they have been consolidated into this single opinion.

## II. APPLICABLE STANDARDS FOR JUDGMENT ON THE PLEADINGS

Defendant labels his filing as a "Motion to Dismiss," presumably under Rule 12(b)(6). *See State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) ("It is well-settled that legislative immunity is not a jurisdictional bar, but is rather a personal defense that may be asserted to challenge the sufficiency of a complaint under Rule 12(b)(6)."). Such a characterization of the motion is improper, however, because Defendant has already filed an answer to the complaint. *See* Fed. R. Civ. P. 12(b) (requiring that a motion asserting a Rule 12(b)(6) defense "shall be made before pleading . . ."). Nevertheless, an untimely motion to dismiss can often be treated as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *Republic Steel Corp. v. Pa. Eng'g Corp.*, 785 F.2d 174, 182 (7th Cir. 1986) (citations omitted). Therefore, Governor Blagojevich's "Motion to Dismiss" is hereby converted to a motion for judgment on the pleadings.

Despite this conversion, the standards of Rule 12(b)(6) continue to apply. *Id.* Therefore, all of the facts alleged in the complaint are taken as

true and all reasonable inferences are drawn in favor of the Plaintiff. *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citing *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004)). A complaint fails to state a claim unless it sets forth "'enough facts to state a claim to relief that is plausible on its face.'" *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. __, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). While "[c]omplaints need not anticipate or attempt to defuse potential defenses," *U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003), "in some cases a complaint so clearly reveals the existence of the defense that judgment on the pleadings is possible," *Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 731 (7th Cir. 1999).[2]

### III. ANALYSIS

#### A. Legislative Immunity

The Defendants raise several claims based on legislative immunity.

---

[2] Rule 12(c) can also be invoked when no issues of disputed fact exist and the movant is entitled to judgment on its *prima facie* case at the close of pleadings. *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 2007). Because the parties treat this motion as one arising under Rule 12(b)(6)'s standards, we will not apply this rule.

First, Governor Blagojevich argues that legislative immunity protects him from liability and creates a testimonial privilege shielding him from deposition. Second, Curry claims a derivative legislative privilege shields her from questions relating to Governor Blagojevich's veto.

### 1.    Protection from Civil Liability

"Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 54, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376, 71 S. Ct. 783, 95 L. Ed. 1019 (1951)). Legislative immunity applies not only to legislators, *id.* at 53-54 (local legislators); *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 402-406, 99 S. Ct. 1171, 59 L. Ed. 2d 401 (1979) (regional legislators); *Tenney*, 341 U.S. at 376-77, 71 S. Ct. 783, 95 L. Ed. 1019 (state legislators); *Kilbourn v. Thompson*, 103 U.S. 168, 201-204, 26 L. Ed. 377 (1880) (federal legislators), but also to non-legislative officials engaging in legislative acts, *Bogan*, 523 U.S. at 55, 118 S. Ct. 966, 140 L. Ed. 2d 79 ("We have recognized that officials outside of the legislative branch are entitled to

legislative immunity when they perform legislative functions . . . ."). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* at 54. Therefore, the court must ask "whether, stripped of all considerations of intent and motive, [defendant's] actions were legislative." *Id.* at 55.

### a. Legislative in Form

In determining whether an act is "legislative," the Supreme Court has employed a two-step analysis scrutinizing both form and substance. *Id*. at 55-56. The first question is whether Governor Blagojevich's actions were legislative in form. Without a doubt, the line-item veto eliminating the Correctional Captain position qualifies as procedurally legislative. *Id.* at 55 ("[A] Governor's signing or vetoing of a bill constitutes part of the legislative process."); *Risser v. Thompson*, 930 F.2d 549, 551(7th Cir. 1991) ("When the governor of a state is exercising his veto power, he is acting in a legislative capacity, and he is therefore entitled to absolute immunity." (citations omitted)). On the other hand, nothing on the face of the complaint suggests that the denial of seniority to the Correctional Captains

was accomplished in the form of a legislative act. Indeed, Governor Blagojevich's motion fails to address this claim at all. As such, only the line-item veto qualifies as being legislative in form.

### b. Legislative in Substance

Though suggesting that further inquiry might be inappropriate, the Court in *Bogan* nevertheless proceeded to analyze whether a purportedly legislative act was legislative in substance as well as form. *Bogan*, 523 U.S. at 55-56, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998). The Court ultimately concluded that the elimination of an entire position for budgetary reasons "bore all the hallmarks of traditional legislation" and thus qualified as substantively legislative. *Id.* Cases involving the hiring or firing of a particular employee (i.e., administrative acts) were distinguished on the ground that the elimination of a position has "prospective implications that reach well beyond the particular occupant of the office." *Id.* at 56. Similarly, the Seventh Circuit has also held that the total elimination of several positions from a budget constitutes a legislative act meriting protection. *Rateree v. Rockett*, 852 F.2d 946, 950-51 (7th Cir. 1988). Thus,

at first blush, Governor Blagojevich's budgetary veto appears to qualify as substantively legislative.

Nevertheless, both *Bogan* and *Rateree* were premised on the assumption that no one replaced the individuals after their positions were eliminated. *Bogan*, 523 U.S. at 55-56, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998) (requiring "prospective implications"); *Rateree*, 852 F.3d at 950 (elimination of position was legislative "especially where . . . the plaintiffs' positions were eliminated altogether and no one was hired to replace them"). In *Canary v. Osborn*, 211 F.3d 324, 330-31 (6th Cir. 2000), the Sixth Circuit rejected a legislative immunity defense where an assistant principal position was "eliminated" but a new position with many of the same responsibilities soon replaced it. Concluding that the position was not actually terminated, the court held that the local legislators' actions constituted, in substance, an administrative employment decision. *Id*. Similarly the Plaintiffs in this case argue that the veto lacked "prospective implications" because the new position of Shift Commander was created to carry on the same tasks as the eliminated Correctional Captains position.

Thus, the Plaintiffs suggest that the budget veto was merely an administrative decision cloaked in legislative garb. *See id; see also Acevedo-Garcia v. Vera-Monroig*, 204 F.3d 1, 5 (rejecting legislative immunity for mayor who, after submitting a budgetary plan resulting in the termination of 102 employees of one political party, hired 77 different workers from another party). If Plaintiffs can prove their point, Governor Blagojevich will be entitled to legislative immunity. Therefore, since the pleadings fail to establish that Governor Blagojevich is entitled to legislative immunity from suit with regard to his veto, the motion for judgment on the pleadings must fail.

### 2. Immunity as a Testimonial Privilege

Defendants next argue that legislative immunity creates an evidentiary and testimonial privilege in addition to protection from suit, *2BD Assocs. Ltd. P'ship v. County Comm'rs for Queen Anne's County*, 896 F. Supp. 528, 531 (D. Md. 1995), and that this protection extends to legislative aides as well, *see Gravel v. United States*, 408 U.S. 606, 616-17 (1972). Even assuming that the testimonial privilege is so broadly construed, the Defendants are

not entitled to its protection because they have thus far failed to show that legislative immunity applies to them.

The party asserting a legislative immunity privilege bears the burden of proving entitlement. *Gov't of V.I. v. Lee*, 775 F.2d 514, 524 (3d Cir. 1985); *see also United States v. Hamilton*, 19 F.3d 350, 354 (7th Cir. 1994) ("The party asserting an evidentiary privilege . . . bears the burden of establishing all the essential elements involved."). Although in this context evidence proffered by the parties may be considered, it makes little difference in this case. Indeed, this Court cannot conclude that Governor Blagojevich's actions were legislative acts because the parties do not provide any information on either the Shift Commander or Correctional Captain positions.[3] As explained above, if a Shift Commander is nothing more than a renamed Correctional Captain, the Governor's veto actions would not be

---

[3] In the future, Defendants are advised to comply with Local Rule of the United States District Court for the Central District of Illinois 7.1(C), which provides:
> If documentary evidence is to be offered in support of or in opposition to a motion, and if that evidence is conveniently susceptible of copying, copies thereof shall be served and filed by the moving party with the motion and by the opposing party with the response thereto. If the evidence is not susceptible of convenient copying, the offering party instead shall furnish, to the court and to the adverse party, a concise summary of the contents and shall immediately make the original available to the adverse party for examination.

CDIL-LR 7.1(C) (2007), *available at* http://www.ilcd.uscourts.gov/localrules.htm.

substantively legislative but rather administrative. Until information on these positions has been provided, the Defendants are not entitled to legislative immunity. Therefore, on the facts currently before this Court, the Defendants have failed to establish all of the elements necessary for invocation of the privilege.

**B.   Standard for Deposition of a High Ranking Official**

Governor Blagojevich also claims that even where legislative immunity does not apply, a high ranking official may only be deposed after a showing of "extraordinary circumstances," at least where his mental processes might be inquired into. The magistrate judge, however, agreed with Plaintiffs that a deposition is permissible after the party seeking the deposition demonstrates some reason to believe that the deposition will produce or lead to admissible evidence. This Court adopted the magistrate's opinion and, on a motion to reconsider, affirmed it again. For the reasons stated in those prior opinions, this Court again finds that a showing of extraordinary circumstances is unnecessary. Therefore, the motion for a protective order is denied on these grounds as well.

## IV.  CONCLUSION

In summation, Governor Blagojevich's "Motion to Dismiss" (d/e 74) is converted to a motion for judgment on the pleadings under Rule 12(c) and DENIED.  Further, Governor Blagojevich's (d/e 71) and Curry's (d/e 76) Motions for Protective Orders are also DENIED.

IT IS SO ORDERED.

ENTERED:                                                December 7, 2007

FOR THE COURT:                             /s Judge Richard Mills
                                                             United States District Judge